# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Wilhelmsen*, 2019 IL App (2d) 180898

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SUZANNE WILHELMSEN, Petitioner-Appellee, and THILO WILHELMSEN, Respondent-Appellant. |
| District & No. | Second District<br>No. 2-18-0898 |
| Filed | October 24, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 13-D-1116; the Hon. Charles L. Smith, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brett T. Williamson, of The Stogsdill Law Firm, P.C., of Wheaton, for appellant.<br><br>Gina L. Colaluca, of Law Office of Gina L. Colaluca, LLC, of Chicago, for appellee. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Schostok and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1     This postdecree appeal presents issues about contribution for higher education expenses by former spouses. Suzanne and Thilo Wilhelmsen were married in 1993 and their marriage resulted in three children—Z.W., M.W., and L.W. Ultimately, the parties divorced in 2013. As part of the marital settlement agreement (MSA) incorporated into the dissolution judgment, the parties agreed to share the payment of the children's higher education expenses pursuant to section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513 (West 2012)), which applies after a child reaches the age of majority. In addition, another section of the MSA provided that Thilo owed Suzanne a support arrearage in the amount of $79,301.44. The MSA stated that Thilo would pay that money to the children's college savings plans under section 529 of the Internal Revenue Code (26 U.S.C. § 529 (2012)) at a rate of $734.27 per month—that is, $244.76 to each child's plan—for 108 months.

¶ 2     Within a year of the entry of the decree, Thilo filed a petition to vacate or modify the judgment and asked the court to "dismiss any arrearages." During this time, Thilo maintained a six-figure income as a sales and bid manager at a design, engineering, and construction firm. (Suzanne also earned a substantial income as an executive at an automotive company.) The court found that Thilo had failed to meet his burden to reopen the judgment. A few months later, Thilo again asked the court to modify the judgment to excuse more than $45,000 of the arrearage to the college plans and to further order that any further contributions be "considered voluntary." The court denied the motion. See generally 750 ILCS 5/510(b) (West 2012) (explaining that provisions concerning property distribution may be modified only on a finding of conditions that warrant reopening the judgment).

¶ 3     Thilo next filed a petition for voluntary bankruptcy under Chapter 13 (11 U.S.C. § 1301 *et seq.* (2012)), which petition was captioned as *In re* Wilhelmsen, No. 16-bk-32787 (N.D. Ill.). Suzanne intervened in the bankruptcy and filed an adversary claim with respect to the section 529 arrearage. Suzanne's adversary action was concluded when the bankruptcy court entered an agreed order classifying the debt to Suzanne as a "domestic support obligation," which is nondischargeable in bankruptcy. See 11 U.S.C. §§ 101(14A), 523(a)(5) (2012).

¶ 4     Next we note that, when the dissolution judgment was entered in 2014, the parties' oldest child Z.W. was 14 years old. By the time some of these matters were resolved, Z.W. had turned 18 and would be enrolling in a private college out of state. Accordingly, Thilo filed a petition to reduce his child support payment, on the basis that Z.W. had reached the age of majority, and he filed a petition to set his contribution for Z.W.'s college expenses to $0 based on his claimed inability to pay for Z.W.'s college education. See generally 750 ILCS 5/513 (West 2018) (enabling court to allocate obligations for educational expenses for a nonminor child). In the alternative, based on his interpretation of section 513(h) (750 ILCS 5/513(h) (West 2018)), which we address below, Thilo again asked the court to credit his arrearage payments to all three of the children's section 529 accounts against any financial obligation the court imposed for Z.W.'s higher education.

¶ 5     On May 17, 2018, the trial court held a hearing, after which it determined that Thilo's child support obligation would be reduced; however, the court ordered that Thilo would pay 40% of Z.W.'s college expenses (based on in-state tuition at the University of Illinois at Urbana-Champaign (see 750 ILCS 5/513(d) (West 2018)) while Suzanne would pay 60%. In addition, the court ordered that there would be no modification of Thilo's obligation to reimburse the

children's section 529 plans. On October 1, 2018, the court denied Thilo's motion to reconsider.

¶ 6    Thilo appeals, and we affirm. Thilo challenges the trial court's application of section 513 of the Act. Under section 513, the court may award educational expenses for adult children for college or professional training. The determination of an award of educational expenses is reviewed for an abuse of discretion (see *Blisset v. Blisset*, 123 Ill. 2d 161, 171 (1988); *In re Marriage of Zukausky*, 244 Ill. App. 3d 614, 623 (1993) (citing *In re Support of Pearson*, 111 Ill. 2d 545, 551 (1986))), while the trial court's interpretation of section 513 is reviewed *de novo* (see *In re Marriage of Petersen*, 2011 IL 110984, ¶ 9). " 'A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court.' " *In re Marriage of Keaton*, 2019 IL App (2d) 180285, ¶ 9 (quoting *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005)).

¶ 7    We first address Thilo's contention that the trial court erred when it "failed to consider anything besides income of the parties in rendering its decision" on the allocation of Z.W.'s college expenses. Section 513(j) of the Act sets forth several factors for the court to consider in allocating higher education expenses to former spouses, which include the parties' present financial resources, the child's standard of living had the marriage not been dissolved, the child's financial resources, and the child's academic performance. 750 ILCS 5/513(j) (West 2018). That said, we reject Thilo's assertion of error. Thilo has failed to include a transcript of the May 17, 2018, evidentiary hearing after which the court allocated Z.W.'s educational expenses. Thilo has also failed to include any exhibits introduced at the hearing. Therefore, we must presume that the court properly applied the factors to the evidence under section 513(j). See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (noting that it is the appellant's burden to present a complete record on appeal and that without one "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis"). For this same reason, we are compelled to reject Thilo's contention that the court ordered him to pay more for Z.W.'s educational expenses than he could afford.

¶ 8    We next turn to Thilo's primary argument: that the trial court erred by not crediting his total monthly arrearage payments—that is, his payments to *all three* of the children's section 529 accounts—against the amounts the court ordered Thilo to pay for Z.W.'s college expenses. Thilo relies on section 513(h) of the Act, which states as follows:

"§ 513. Educational Expenses for a Non-minor Child.

* * *

(h) An account established prior to the dissolution that is to be used for the child's post-secondary education, that is an account in a state tuition program under Section 529 of the Internal Revenue Code, or that is some other college savings plan, is to be considered by the court to be a resource of the child, provided that any post-judgment contribution made by a party to such an account is to be considered a contribution from that party." 750 ILCS 5/513(h) (West 2018).

Emphasizing the final clause in section 513(h), Thilo further disputes the provenance of the arrearage itself, which he would also have us label a "fictitious debt," and characterizes his payment of the arrearage as an "involuntary contribution." According to Thilo, because the legislature did not distinguish between voluntary and involuntary contributions, section 513(h) required the trial court to credit his contributions to the children's section 529 plans against the allocation of the children's higher education expenses.

- 3 -

¶ 9        To the extent Thilo claims that his contributions are involuntary, we note that the parties' MSA clearly provided that Thilo owed Suzanne a marital debt (whatever the source) and would reimburse each of the children's section 529 plans accordingly. Of course, " '[i]t is well established that the parties in a dissolution proceeding may *voluntarily* settle their property interests' " (emphasis added) (*In re Former Marriage of Donnelly*, 2015 IL App (1st) 142619, ¶ 12 (quoting *In re Marriage of Holderrieth*, 181 Ill. App. 3d 199, 206 (1989))), and that is precisely what the parties did here. Conversely, we note too that the agreement provided that Thilo and Suzanne would jointly bear the children's higher education expenses and did not provide in any form whatsoever that Thilo's repayment of the marital debt would reduce his future obligation for any of the children's higher education expenses once they reached majority age. Had the parties intended such a reduction in Thilo's future obligation, we imagine they would have said as much. See *Blum v. Koster*, 235 Ill. 2d 21, 35 (2009).

¶ 10       In any event, we find no support for Thilo's interpretation that section 513(h) of the Act mandates such a reduction. It appears that Thilo is focusing on the final clause in section 513(h) to the exclusion of all of the remaining text of section 513. Section 513(h) states that a college savings account "is to be considered by the court to be *a resource of the child*" (emphasis added) (750 ILCS 5/513(h) (West 2018)), which merely guides the court's consideration of the child's financial resources as it considers a number of factors under section 513(j) (750 ILCS 5/513(j) (West 2018)) when making an award—nothing more. Further, we find Thilo's interpretation of section 513(h) insupportable as it would seemingly *require* a court to deduct all contributions to a minor's college savings plan from a nonminor's college expenses. That result would plainly frustrate the legislature's intent that former spouses ought to equitably provide for the educational expenses of their nonminor children. See *In re Marriage of Petersen*, 2011 IL 110984, ¶ 12 (discussing legislative history of section 513). As with the parties' MSA, we find that, if the legislature had intended to credit a parent's prior contributions against an award concerning a nonminor's future expenses, it would have clearly said so. See *Hanson v. Board of Trustees of the State Universities Retirement System*, 115 Ill. App. 3d 974, 976 (1983) ("When the language of a statute is precise and the intent of the draftsmen is clear, the court's only function is to enforce the law as enacted.").

¶ 11       We close with one final point. In the statement-of-facts section of Thilo's brief, he asserts that the agreed order entered in bankruptcy court, classifying the arrearage as a nondischargeable domestic support obligation, "immediately made the 529 debt modifiable." This argumentative statement, in addition to violating the rules governing briefing (see Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018)), has absolutely no legal support. See 11 U.S.C. § 523(a)(5) (2012). Naturally, labeling a debt nondischargeable does not expose the obligation to some new form of modification. Rather, it would be more apt to say, as the trial court did below, that the debt imposed in the parties' MSA is modifiable if and only if *the parties* agree to modify it. However, Suzanne had not assented to a modification, and the trial court found that Thilo had not justified a reopening of the judgment. See 750 ILCS 5/510(b) (West 2018). Based on the limited record before us, we can only agree with the trial court's assessment.

¶ 12       Accordingly, we affirm the judgment of the circuit court of Lake County.

¶ 13       Affirmed.